**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2847-WJM

THUY NGUYEN,

    Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER AFFIRMING DECISION OF THE ADMINISTRATIVE LAW JUDGE**

---

    This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Thuy Nguyen ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

    For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I.  BACKGROUND

    Plaintiff Thuy Thu Nguyen was born on June 27, 1962 and was 43 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 7) at 18.) Plaintiff has a high school education, is able to communicate in English, and has past relevant work

experience as a restaurant hostess. (R. at 18-19.)

Plaintiff filed an application for supplemental security income on June 6, 2007, and an application for a period of disability and disability insurance benefits on June 25, 2007, alleging that she had been disabled since August 28, 2005 due to several impairments, including depression, anxiety, and several physical impairments. (R. at 9, 11.) Plaintiff's application was initially denied on August 29, 2007. (R. at 9.)

After requesting a hearing, Plaintiff's claims were heard by Administrative Law Judge ("ALJ") Paul Conaway on March 12, 2009. (R. at 9.) Plaintiff and vocational expert Anthony F. Manuele testified at the administrative hearing. (*Id.*) Medical evidence and opinions were provided by, among other sources, treating physician Dr. Mai Lee, M.D.; examining psychotherapist Dr. Paul Lam, Ph.D.; and state agency reviewing psychologist Dr. Gayle Frommelt, Ph.D. (R. at 12-13, 17.)

On April 27, 2009, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 28, 2005, the alleged onset date. (R. at 11.) At step two, he found that Plaintiff suffered from major depression and adjustment disorder with mixed anxiety and depression, both severe impairments. (*Id.*) The ALJ did not find any of Plaintiff's physical impairments to be

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

severe. (R. at 11-14.) At step three, the ALJ found that Plaintiff's depression and adjustment disorder, while severe, did not meet or medically equal any of the impairments or combination of impairments listed in the social security regulations. (R. at 14.) In so finding, the ALJ considered the psychiatric review technique "B criteria", and assessed Plaintiff's limitations in daily living, social functioning, concentration and pace, and episodes of decompensation. (*Id.*)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that she had the physical RFC to perform a full range of work at all exertional levels, but was limited to unskilled work due to her mental impairments. (R. at 15.) The ALJ also found that Plaintiff was capable of understanding and carrying out simple instructions, and responding appropriately to supervision and usual routine work situations, but could have only limited interpersonal interactions with coworkers and supervisors, and should not have interpersonal interaction with the general public beyond incidental, brief contacts. (*Id.*) Given this mental RFC, at step four the ALJ found that Plaintiff could not perform her past relevant work as a restaurant hostess. (R. at 17-18.) At step five, based upon testimony from the vocational expert, the ALJ found that Plaintiff was capable of performing other work in the national economy, including work as a commercial cleaner, a hand packer, and a hotel/motel maid. (R. at 19.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and therefore was not entitled to benefits. (*Id.*)

The Appeals Council denied Plaintiff's request for review on August 27, 2012. (R. at 1.) Thus, the ALJ's April 27, 2009 decision is the final administrative action for purposes of review.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

On appeal, Plaintiff raises several arguments for reversal, arguing that: (1) the ALJ improperly assessed Plaintiff's credibility and disregarded Plaintiff's testimony of her subjective complaints; (2) the ALJ failed to properly weigh the medical opinion of treating physician Dr. Lee; (3) the ALJ improperly weighed the opinions of Drs. Lam and Frommelt, and failed to incorporate Dr. Frommelt's limitations into the mental RFC; (4) the ALJ erred in refusing to hear testimony from Plaintiff's boyfriend at the hearing; (5) the ALJ erred at step five with respect to the vocational expert's testimony; and (6) the ALJ erred at step two in discussing the functional limitations of Plaintiff's mental

4

impairments. (ECF No. 14 at 1-2.) Plaintiff alleges that each of these errors requires reversal either because it was caused by the ALJ's application of the wrong legal standard, or that it resulted in a decision that was not based on substantial evidence. (*Id.*) The Court will address Plaintiff's arguments in turn below.

### A.     Plaintiff's Testimony

Plaintiff argues that the ALJ improperly disregarded her testimony of her "deficits in concentration, organization, focus, pace and the ability to maintain an appropriate relationship with others". (ECF No. 14 at 6.) Plaintiff also contends that the ALJ failed to assess whether Plaintiff's financial condition prevented her from pursuing medical tests, and that the ALJ improperly relied upon his own opinion when evaluating Plaintiff's credibility with respect to her physical and mental symptoms. (*Id.* at 8-9.)

Here, Plaintiff argues both that her complaints of physical pain were improperly disregarded, and that her mental impairments were not properly evaluated using the requisite analysis. (ECF No. 14 at 6, 8-9.) In evaluating a claimant's subjective testimony of disabling pain, the ALJ must consider the following:

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).

Neither of Plaintiff's asserted errors requires reversal. First, with respect to Plaintiff's pain-producing physical impairments, the ALJ was required to determine whether the impairments were proven by objective medical evidence before proceeding

5

to an analysis of whether the impairment was related by a "loose nexus" to Plaintiff's allegations of disabling pain. *See Luna*, 834 F.2d at 164. An impairment that is "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms", is known as a "medically determinable impairment". 20 C.F.R. § 404.1508. "Symptoms" are defined as a claimant's own subjective complaints, "signs" as observable "anatomical, physiological, or psychological abnormalities which . . . must be shown by medically acceptable clinical diagnostic techniques," and "laboratory findings" as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528.

Here, the ALJ noted that none of Plaintiff's physical diagnoses was supported by objective "medically acceptable clinical or laboratory diagnostic techniques". (R. at 12-14.) Instead, the ALJ found that Dr. Lee had diagnosed Plaintiff's physical impairments based only upon Plaintiff's complaints of pain and other subjectively reported symptoms. (R. at 13-14.) Because the only support in the record for Plaintiff's physical impairments—beyond Plaintiff's own statements of her symptoms—were Dr. Lee's examination records (*see* R. at 215-71), which themselves were based solely on Plaintiff's subjective complaints, there were no medical "signs" or "laboratory findings" that would have permitted a conclusion that the impairments were medically determinable.[2] *See* 20 C.F.R. § 404.1508. Therefore, the ALJ need not have

---

[2] Dr. Lee's records did include laboratory test results for cholesterol and blood analyses, gynecological exams, and endoscopy results. (R. at 274-88, 368-95.) However, these objective medical tests were not demonstrative of Plaintiff's asserted physical impairments, which included tension headaches, joint pain, hand numbness, carpal tunnel syndrome, sciatica, and leg length discrepancy. (*See* R. at 12-14.)

considered whether a "loose nexus" existed between the physical impairment and the reported pain, because the record supports the ALJ's determination that no "objective medical evidence" established such an impairment. *See Thompson*, 987 F.2d at 1488. Accordingly, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective reports of physical pain.

Anticipating this reasoning, Plaintiff argues that the lack of objective tests supporting her physical impairments "arguably" resulted from her "lack of funds to seek medical care", and that the ALJ erred in failing to ask Plaintiff about her financial ability to obtain medical tests. (ECF No. 18 at 6-7.) This assertion is speculative and without support in the record. Plaintiff did not testify that she was unable to seek medical care for financial reasons; to the contrary, the records of numerous medical visits with Dr. Lee over multiple years attest to Plaintiff's ability to seek care. (*See* R. at 296-390.) Nor is there is evidence that Dr. Lee ever recommended medical testing to Plaintiff that she was unable to afford. (*Id.*) The ALJ did not err in failing to inquire about a purely speculative barrier to developing the record.

With respect to Plaintiff's mental impairments, she argues that the ALJ erred in failing to consider the "loose nexus" between her testimony of her "deficits in concentration, organization, focus, pace and the ability to maintain an appropriate relationship with others" and her medically determinable mental impairments. (ECF No. 14 at 6.) Plaintiff also contends that the ALJ improperly relied upon his own opinion when evaluating Plaintiff's credibility with respect to both her physical and mental symptoms. (*Id.* at 9.)

Plaintiff cites no controlling authority applying the *Luna v. Bowen* "loose nexus" test to the mental symptoms of which she complains. (*See* ECF No. 14 at 6 (citing only a Third Circuit case applying *Luna* to dizziness symptoms).) However, assuming that the same analysis applies, the Court finds that the ALJ's reasoning was sufficient. Plaintiff complained of difficulty focusing, concentrating, and relating to others. (*Id.*) The ALJ identified a nexus between those symptoms and Plaintiff's medically determinable severe impairments, namely depression and adjustment disorder, and he considered their potentially disabling effects in formulating Plaintiff's RFC. (*See* R. at 15-17; *see also* Part III.C, below.) Thus, the ALJ did not err in analyzing Plaintiff's testimony of her mental impairments.

Finally, the ALJ generally discredited Plaintiff's testimony, finding that she likely exaggerated her symptoms. (R. at 14-17.) Plaintiff contends that the ALJ improperly judged her by his own opinion, rather than objectively evaluating her credibility. (ECF No. 14 at 9.) In support of this contention, Plaintiff cites two passages from the hearing before the ALJ, in which the ALJ comments that "a lot of people pick themselves up and pull themselves together" after trauma similar to what Plaintiff suffered during Hurricane Katrina, and then inquires whether Plaintiff is "feeling better now than you did right after Katrina". (*Id.* (quoting R. at 45).) Plaintiff also quotes from the ALJ's question inquiring whether Plaintiff was "living off the free rent and the food stamps for how long after you came to Colorado?  Are you still getting those?" (*Id.* (quoting R. at 44).) Plaintiff does not explain how these questions suggest that the ALJ relied on his own opinions or prejudged Plaintiff, but appears to be implying that the ALJ's questions were suggestive of an opinion that Plaintiff's condition should have improved rapidly after Hurricane

Katrina, as she benefitted from housing and food subsidies. Plaintiff's asserted subtext is speculative, unfounded, and is not a basis for reversal.

Furthermore, an ALJ's credibility determinations are generally treated as binding on review by a court. *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). This is so because "[e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court." *Id.* (quoting *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983)). Here, the ALJ determined that Plaintiff's inconsistent reports of her symptoms across the record and in the hearing, combined with the lack of objective medical findings supporting her physical impairments and a sudden spike in the severity of her reported symptoms immediately after she applied for benefits, suggested that Plaintiff was "exaggerating reports of severe symptoms in an effort to prove her 'disability.'" (R. at 14.) The Court can neither substitute its own judgment for the agency, nor reweigh the evidence the ALJ used to determine that Plaintiff was not credible. *See Salazar*, 468 F.3d at 621. Having reviewed the record, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

Accordingly, the Court finds no error in the ALJ's credibility determination and analysis of Plaintiff's testimony.

**B.    Step Two**

Plaintiff makes two arguments with respect to the ALJ's determinations at step two, contending that: (1) the ALJ improperly weighed the uncontested medical evidence in the opinion of treating physician Dr. Lee, and therefore failed to consider the limiting effects of the physical impairments Dr. Lee diagnosed; and (2) the ALJ improperly

analyzed the disabling effects of Plaintiff's mental impairments.  (ECF No. 14 at 10-12.)

     1.     <u>Treating Physicians' Medical Opinions</u>

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time."  *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996).  However, an ALJ may disregard that opinion if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record.  *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927).

Plaintiff argues that as her treating doctor, Dr. Lee's opinion merited not only significant weight, but controlling weight, and the ALJ improperly disregarded it.[3]  (ECF No. 18 at 3-4.)  However, as discussed above, the ALJ found that Dr. Lee's diagnoses

---

[3] The Court notes that Plaintiff did not raise this argument until her Reply brief.  (ECF No. 18 at 3-4.)  An argument not raised in the opening brief is typically waived.  *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).  However, in the interest of thoroughness, the Court will discuss this belated argument.

were not supported by medically acceptable clinical or laboratory diagnostic techniques. (R. at 12-14.) Accordingly, Dr. Lee's opinion did not merit controlling weight. *Watkins*, 350 F.3d at 1300. Nevertheless, the ALJ still thoroughly discussed Dr. Lee's findings, evaluated the limitations Dr. Lee imposed, and determined that those limitations were "mild", "do not support an inability to work", and "there is no showing that these were permanent limitations or limitations for 12 continuous months or more." (R. at 13.) Because the effects of the physical diagnoses in Dr. Lee's records were not sufficiently limiting, at step two the ALJ determined that Plaintiff's physical impairments were not severe.[4] (R. at 14.)

In sum, the ALJ assessed Dr. Lee's opinion, and applied the correct legal standard in electing not to assign it controlling weight. Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of Dr. Lee's opinions, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record. *See Lax*, 489 F.3d at 1084. Accordingly, the ALJ did not err in weighing the medical evidence provided by Dr. Lee.

2.  "Special Technique"

Plaintiff also asserts that the ALJ failed to properly apply the "special technique" requiring rating of Plaintiff's functional limitations at step two, in which the ALJ is

---

[4] The severe impairment standard at step two requires evidence that a claimant's medically determinable impairment "significantly limits [her] physical or mental ability to do basic work activities". 20 C.F.R. § 404.1520(c). The purpose of this requirement is for the claimant to "make a threshold showing that h[er] medically determinable impairment or combination of impairments" has a material affect on her job prospects. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

required to "rate the degree of a claimant's functional limitations caused by those [mental] impairments" in four broad areas of functionality, and "then appl[y] those ratings in determining whether the claimant's mental impairments are severe at step two, and if so, whether these severe impairments meet or are equivalent in severity to a listed mental disorder at step three." (ECF No. 14 at 12 (quoting *Velasquez v. Astrue*, 2013 WL 1191239 (D. Colo. Mar. 21, 2013)).)

Plaintiff appears to have ignored the paragraph in the record in which the ALJ precisely follows those requirements, finding Plaintiff moderately limited in daily living activities, social functioning, and concentration and pace, with no episodes of decompensation with loss of adaptive functioning. (R. at 14.) The ALJ then finds at step two that these limitations, attributable to Plaintiff's depression and adjustment disorder with depression and anxiety, are severe impairments, but that they do not meet or medically equal a listed impairment at step three. (R. at 13-14.) This was not error, as the ALJ followed precisely the requirements Plaintiff discusses.

**C.    RFC**

Plaintiff makes two arguments with respect to the ALJ's RFC determination, arguing that (1) the ALJ failed to consider all of Plaintiff's impairments in combination, and (2) the ALJ failed to properly weigh the opinions of Dr. Lam and Dr. Frommelt in formulating the RFC. (ECF No. 14 at 7-8, 11.)

   1.    <u>Combination of Impairments</u>

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's physical impairments in combination with her mental impairments, even after the physical impairments were found not to be severe. (ECF No. 14 at 7-8.) In determining the

scope of a claimant's RFC, the ALJ's assessment must "consider all of [a claimant's] medically determinable impairments . . . , including [her] medically determinable impairments that are not severe". 20 C.F.R. § 404.1545(a)(2).

As discussed above, the ALJ found that there was no objective medical evidence supporting Plaintiff's alleged physical impairments. (R. at 12-14.) Because these impairments were not "medically determinable", the ALJ was not required to consider them in formulating the RFC. *See* 20 C.F.R. § 404.1508. Thus, the ALJ's failure to do so was not in error.

### 2. Dr. Lam and Dr. Frommelt

Plaintiff makes two arguments with respect to the ALJ's weighing of the opinions of Dr. Lam and Dr. Frommelt in formulating the RFC: (1) the ALJ improperly disregarded the opinions of Dr. Lam, giving it less weight than Dr. Frommelt's, and (2) he disregarded the parts of Dr. Frommelt's opinion that were favorable to a finding of disability. (ECF No. 14 at 7, 11.)

The ALJ explicitly discussed Dr. Lam's records, noting the observations and diagnoses Dr. Lam made, and adopting the diagnoses of major depression and adjustment disorder with anxiety and depression in his step two analysis of Plaintiff's severe impairments. (R. at 17.) The ALJ then noted that Dr. Lam did not indicate any specific limits or work restrictions based upon these diagnoses, only making treatment recommendations. (*Id.*; *see* R. at 295 (recommending psychotherapy conducted in Vietnamese, medical assistance for physical concerns, and medication if depressive symptoms worsen).) Given this analysis, the Court finds no support for Plaintiff's contention that the ALJ disregarded any part of Dr. Lam's opinion.

With respect to Dr. Frommelt, the ALJ found that her opinion was "consistent with the psychological consultative examination by [Dr.] Lam", and therefore adopted her opinion and the work limitations contained therein. (R. at 17.) Dr. Frommelt's RFC assessment stated that Plaintiff could have problems with inconsistent pace and frequent interaction with the public, but "when work does not involve tasks of more than limited complexity and attention to detail, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduce pace." (R. at 196.) Dr. Frommelt's RFC assessment further noted that Plaintiff could "accept supervision and relate to coworkers if contact is not frequent and prolonged", and "[s]hould have minimal interaction with the general public." (*Id.*) The ALJ's RFC finding incorporated all of these restrictions, limiting Plaintiff to unskilled work involving simple instructions and a routine work setting, and only "limited interpersonal interactions". (R. at 15.)

Plaintiff asserts that the ALJ failed to incorporate limitations stemming from Dr. Frommelt's evaluation of Plaintiff as "moderately limited" in multiple areas. (ECF No. 18 at 6.) This argument ignores the fact that Dr. Frommelt herself incorporated those limitations into her RFC assessment, which was then adopted by the ALJ. (*See* R. at 194-96.) In adopting Dr. Frommelt's RFC assessment, the ALJ was not required to second-guess Dr. Frommelt's own extrapolation of the assessed functional limitations into work restrictions, nor would it have been appropriate for him to do so without basing such a decision on medical evidence in the record. Rather, Dr. Frommelt's opinion of Plaintiff's RFC, which was consistent with the opinion of Dr. Lam, provided substantial evidence to support the ALJ's decision to adopt that opinion without

augmentation.  Thus, the ALJ did not err in adopting Dr. Frommelt's RFC assessment.

**D.     Step Five**

Plaintiff argues that the ALJ erred at step five with respect to the vocational expert's testimony, contending that (1) the ALJ erred in prohibiting Plaintiff's counsel from asking the vocational expert about the effect of her small body size on her ability to perform heavy work, and (2) the ALJ failed to take into account the vocational expert's responses in cross-examination. (ECF No. 14 at 10.)

With respect to Plaintiff's body size, the ALJ stated that the question of whether Plaintiff's body size would impair her ability to do heavy work was not "a proper question per the regs", because Plaintiff's body size was "not something that can be taken into the determination of disability.  All limitations must flow from a medically determinable physical or mental impairment." (R. at 57-58.)  Plaintiff does not argue that Plaintiff's small size resulted from an impairment, and cites no authority permitting counsel to question the vocational expert regarding limitations not resulting from medically determinable impairments.  The ALJ's decision to prohibit such questioning was therefore not error.

Plaintiff next argues that the ALJ failed to take into account the vocational expert's responses in cross-examination, wherein the vocational expert agreed that all work would be precluded if Plaintiff were bedridden two days per week due to her mental impairments. (ECF No. 14 at 10; *see* R. at 61.)  However, as discussed above, the ALJ reasonably discounted Plaintiff's credibility in testifying to such extreme symptoms.  Thus, it was not error for the ALJ to omit those limitations from the RFC and from the hypothetical questions posed to the vocational expert, resulting in a

finding that Plaintiff was capable of working.

**E.     Boyfriend's Testimony**

Finally, Plaintiff argues that the ALJ erred in refusing to hear testimony from Plaintiff's boyfriend at the hearing. (ECF No. 18 at 2-3.) Plaintiff misreads the record when she contends that the ALJ refused to hear testimony from her boyfriend. The transcript of the hearing before the ALJ reveals that, although the ALJ put time pressure on Plaintiff's counsel by noting that he was already late for his next hearing, the ALJ nevertheless asked Plaintiff's counsel "whether we need to have testimony from the boyfriend". (R. at 54.) In response, Plaintiff's counsel stated, "I don't think so." (*Id.*) Plaintiff's counsel's choice, not the ALJ's refusal, resulted in the decision not to introduce testimony from Plaintiff's boyfriend. Therefore, the Court finds no error in the failure to hear testimony from Plaintiff's boyfriend.

In sum, the Court rejects Plaintiff's arguments of error, and finds that the ALJ applied the correct legal standards and his conclusions were supported by substantial evidence in the record.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 27th day of November, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge
